IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 03-04-M-DWM |
| Plaintiff, | |
| vs. | ORDER |
| LEO JAMES TAYLOR, | |
| Defendant. | |

On January 23, 2025, Defendant Leo James Taylor filed a motion under 18
U.S.C. § 3582(c) seeking to reduce his 511-month federal sentence.[1] (Doc. 61; *see*
Doc. 30 (Judg.).) Counsel was appointed, (Doc. 63), and an amended motion was
filed on May 21, 2025, (Doc. 67.) The government does not oppose. (*Id.*; Doc.
68.) Taylor's projected release date is April 23, 2039. *See* Inmate Locator,
http://www.bop.gov/ inmateloc (accessed July 31, 2025). For the reasons stated
below, Taylor's motion is granted.

---

[1] Taylor was convicted of nine counts: felon in possession of a firearm in violation
of 18 U.S.C. § 922(g)(1) (Counts I and II); felon in possession of an explosive
device in violation of 18 U.S.C. § 842(i)(1) (Count III); possession of a firearm
equipped with a silencer during drug trafficking in violation of 18 U.S.C.
§ 924(c)(1)(B)(ii) (Count IV); possession of a firearm during drug trafficking in
violation of 18 U.S.C. § 924(c)(1)(B)(ii) (Count V); possession of a silencer and
destructive devices in violation of 26 U.S.C. §§ 5841, 5861(d), 5871 (Counts VI,
VIII, IX); and manufacture of a silencer in violation of 26 U.S.C. §§ 5822, 5861(f),
5871 (Count VII). (Doc. 30 (Judg.).)

ANALYSIS

The First Step Act of 2018 gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam). The Court must also find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG §1B1.13(a)(2).

Here, Taylor's argument for compassionate release is twofold. First, Taylor argues that an extraordinary and compelling reason justifying a reduction in his sentence exists because, having served over 10 years of an unusually long sentence, a non-retroactive change in the law produces a gross disparity between his sentence and the sentence that would likely be imposed at present. Second, he argues that his remorse and rehabilitation constitute an extraordinary and compelling reason for a reduction of his sentence. Because Taylor is correct and the § 3553(a) factors weigh in favor of such a reduction, his motion is granted.

I.    **Exhaustion of Administrative Remedies**

A defendant may only file a motion for compassionate release with the

district court once the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Taylor made a request to the warden of his facility for early and no relief was granted. (*See* Doc. 61-1 at 52–54.) Taylor has therefore exhausted his administrative remedies as required by statute.

## II.    Extraordinary and Compelling Reasons

As mentioned above, Taylor argues that an extraordinary and compelling reason exists here because, having served about 23 years of an unusually long sentence, a non-retroactive change in the law produces a gross disparity between his sentence and the sentence that would likely be imposed at present; and he is remorseful and rehabilitated. While the First Step Act does not define "extraordinary and compelling reasons," the Sentencing Commission provides explicit examples of what constitutes such reasons, including non-retroactive changes in the law when the defendant has served at least 10 years of an unusually long sentence and the change in law would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. U.S. Sent'g Comm'n, Guidelines Manual § 1B1.13(b)(6).

The Commission also includes a catch-all example where a "defendant

3

presents any other circumstances or combination of circumstances that, when considered themselves or together with any" other examples "are similar in gravity to those" examples.  § 1B1.13(b)(5).

Considering Taylor's arguments in the context of those policy statements, he has shown extraordinary and compelling reasons for early release.

### a.  Unusually Long Sentence

#### i.  Changes in the Law

Taylor was sentenced on March 19, 2004.  (Doc. 30.)  He argues that the changes in law addressed below that occurred following the date he was sentenced in March 2004, (Doc. 30), produces a gross disparity between his sentence and the sentence that would likely be imposed at present.

#### 1.  Shift in Guidelines from Mandatory to Advisory

Less than one year after Taylor was sentenced, the Supreme Court decided *United States v. Booker*, which severed the mandatory provisions from the Sentencing Reform Act of 1984 rendering the Sentencing Guidelines advisory. 543 U.S. 220 (2005).  Following *Booker*, a three-step process for sentencing federal defendants has emerged.  *See Gall v. United States*, 552 U.S. 38, 47–48 (2007); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).  First, the sentencing judge calculates the applicable guideline range, then the judge calculates any applicable departures from this range, and, lastly, the judge determines whether to

4

vary from the guideline sentence based on the § 3553(a) factors.[2]  *See Gall*, 552 U.S. at 46.

### 2. Effect of Mandatory Minimums on Predicate Offenses

In 2017, the Supreme Court decided *Dean v. United States*, which held that 18 U.S.C. § 924(c) does not prevent a sentencing court from considering a mandatory minimum imposed pursuant to that provision in determining a reasonable sentence for the predicate offense.  581 U.S. 62 (2017).

### ii. Time Served

Taylor has served about 23 years of his term of imprisonment, (Doc. 68 at 8; *see* Doc. 30), which is over double the time served required for eligibility under this example, *see* U.S. Sent'g Comm'n, Guidelines Manual § 1B1.13(b)(6) (requiring at least 10 years of a sentence to be served).

### iii. Unusually Long Sentence

Taylor's 511-month sentence is unusually long.  At the time of sentencing, with a total offense level of 30 and criminal history category of V, Taylor's Guideline range was 151 to 188 months.  PSR ¶¶ 20, 30, 50.  However, no guideline calculation was conducted as to Counts IV and V (charging possession of

---

[2] The 2025 Amendments to the Guidelines Manual endorse a two-step sentencing process, largely removing downward departures and encouraging variances instead.  U.S. Sent. Comm'n Guidelines Manual (May 1, 2025).

a firearm during drug trafficking in violation of 18 U.S.C. § 924(c)(1)) because "the counts carry a mandatory minimum of 30 years, consecutive to the underlying offenses." (PSR ¶ 21.) The convictions for these two counts were merged pursuant to *United States v. Franklin* because they involved the same underlying offense, 321 F.3d 1231 (9th Cir. 2003). (PSR ¶ 49.) Thus, Taylor was sentenced to 30 years (360 months) on Counts IV and Count V (merged), to run consecutively to 120 months on Counts I, II, III, VI, VII, and VIII, and 120 months on Count IX (31 months consecutive, 89 concurrent). (Doc. 30 at 3.) Accordingly, as to the counts for which the guideline range was calculated, Taylor was sentenced within the Guideline range to 151 months. (*See id.*; PSR ¶ 50.) Although a typical approach to evaluating unusually long sentences is whether the sentence fell within the Guideline range, *see e.g., United States v. Steidell*, 2024 WL 1414195, at *5 (D. Haw. Apr. 2, 2024), the mandatory consecutive sentences at issue here make that approach unworkable. Moreover, Taylor is not arguing that his Guideline range would itself be different based on a changed non-retroactive law but instead that, given the changes in law, it is likely that the Court at present would have considered his mandatory minimum sentence when calculating the sentences as to his other counts, and, ultimately, imposed a lesser sentence as to those counts. He is correct,[3] and the government does not argue to the contrary.

---

[3] Taylor's sentence is also unusually long when compared to the average length of

6

*See United States v. Villareal*, 2022 WL 874967, at *7 n.8 (S.D. Cal. Mar. 24, 2022) (explaining the government's lack of opposition may be treated as a concession).

### iv. Gross Disparity

There is a gross disparity between the sentence Taylor is serving and the sentence likely to be imposed at present. At the time of sentencing, the Guidelines were mandatory, *see Booker*, 543 U.S. 220 (2005), and it had not been decided whether sentencing judges had discretion under 18 U.S.C. § 924(c) to consider a mandatory minimum imposed pursuant to that provision in determining a reasonable sentence for the predicate offense, *see Dean*, 581 U.S. 62 (2017). Thus, at Taylor's sentencing, "[t]here was no legal basis to impose a below-Guidelines sentence; no ability to vary pursuant to the 18 U.S.C. § 3553(a) factors; [and] no downward departures were requested." (Doc. 68 at 12.) As a result, the sentence imposed was that which was required by law.

Today, it is well-settled that in consideration of the § 3553(a) factors, a sentencing judge can consider a mandatory, consecutive 30-year sentence under § 924(c) and exercise full discretion in determination of the sentence as to the other

_____

all sentences imposed nationwide. Indeed, Sentencing Commission data shows that between 2013 and 2022, "fewer than 12 percent of all offenders were sentenced to a term of imprisonment of 10 years or more." *United States v. Landeros-Valdez*, 2025 WL 70124, at *3 (D. Idaho Jan. 10, 2025).

7

counts. *See Dean*, 581 U.S. 62 (2017). At the time of sentencing, this Court

determined that "the 30-year consecutive mandatory sentence" alone would

"accomplish the goals of punishment, deterring [Taylor] from engaging in this,

protecting the community, incapacitating [Taylor] and providing just punishment."

(Doc. 68 at .) Thus, at present, a likely sentence would be the mandatory,

consecutive 30 years as to Counts IV and V (merged), and concurrent one-day

sentences as to his remaining counts. *See, e.g., Dean*, 581 U.S. at 69. Further, as

is well explained by the briefing on this motion, Taylor was sentenced in a

different "era" that encouraged draconian sentences and discouraged "exhibitions

of mercy." (Doc. 68 at 15–16.)

Accordingly, Taylor has shown extraordinary and compelling reasons

related to his sentence that warrant a sentence reduction.

### b. Rehabilitation

Pursuant to the catchall example, Taylor argues that his rehabilitation and

remorse should be considered in combination with the above reasons as

justification for sentence reduction. Although rehabilitation of a defendant alone is

not "an extraordinary and compelling reason," it "may be considered in

combination with other circumstances in determining whether and to what extent a

reduction in the defendant's imprisonment is warranted." §1B1.13(d).

As to his remorse, Taylor points to his allocution at sentencing and his cover

letter accompanying his pro se motion.  At sentencing he stated "I can't stress to you how sorry I am.  The amount of guilt that I have outweighs the mass of the foundations of heaven." (Doc. 68 at 17.)  He also cautioned the "young people" present in the courtroom that methamphetamine can "destroy" their lives.  (*Id.*)  In his cover letter, Taylor wrote that he sends his "deepest regrets and heart felt apology for the crimes" that he "committed against GOD and country."  (Doc. 61 at 3.)  Although Taylor's remorse does not weigh heavily on the evaluation of his motion, it appears credible.

Considering Taylor's pro se motion and his amended motion together, his rehabilitation is clear.  Taylor not only includes certificates demonstrating his programming[4] and educational achievements, but also submits letters that often refer to Taylor as "Pastor Jimmy" and praise both the sincere dedication of his life to his faith and the support he provides to the prison community as a pastor through his teachings and kindness.[5]  One of these letters was written by V. Parker, a Bureau of Prisons Counselor, which highlights "Taylor's dedication to rehabilitation and his continuous exceptional work ethic as unit orderly."  (Doc. 61-1 at 66.)  She further asserts her "confiden[ce] that Taylor will be an

---

[4] *E.g.*, "The Kairos Inside Weekend Program" (Doc. 61-1 at 42); "Vocational Training Program (*id.* at 43); "Struggle & Unity Award" (*id.* at 44); "Certificate of Achievement" for "college level 101 Hermeneutics Course" with "study of the Old and New testament" (*id.* at 46).

[5] (Doc. 61-1 at 57–72; Doc. 68-1; Doc. 68-2.)

exceptional, productive, and outstanding law-abiding citizen upon release" given her personal experiences with him and because the "Bureau of Prisons consider[s] Taylor [to have] a low risk [for] recidivism." (*Id.*) Taylor's daughter, Ashley, also wrote a letter, which describes Taylor as honest, remorseful, and extremely supportive. (Doc. 68-1 at 1–2.) Ashley states that she and her family "would love to have [Taylor] come live with [them] if" he is released and that he would be given the opportunity to serve as a pastor at their church. (*Id.* at 1.) These letters demonstrate Taylor's rehabilitation, which considered in combination with his unusually-long-sentence argument, supports a reduction in sentence.

## III.    Section 3553(a) Factors

To determine whether relief is appropriate, a court must also consider the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. *See* 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory Guidelines range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4),

10

(6).

The nature and circumstances of Taylor's offense were egregious,

particularly given that drugs and weapons are a menacing combination.  However,

it appears that Taylor has undergone significant rehabilitation during his

imprisonment as discussed above.  *See Pepper v. United States*, 562 U.S. 476, 493

(2011).  Indeed, the record demonstrates that he has significantly changed as a

person since the time of his sentencing.  Now, he does not represent a danger to the

public and is adequately deterred from criminal conduct, as is further evidenced by

his low risk of recidivism due to advanced age, *see* U.S. Sent'g Comm'n, The

Effects of Aging on Recidivism Among Federal Offenders, at 3 (Dec. 2017); (*see*

Doc. 61-1 at 40 (Taylor's low PATTERN[6] score)), and his maintenance of

sobriety, (Doc. 68 at 15).  Further, Taylor has served approximately 23 years of his

prison term, which sufficiently reflects the seriousness of his crimes, promotes

respects for the law, and provides just punishment.

## CONCLUSION

Accordingly, IT IS ORDERED that the defendant's motion for

compassionate release under 18 U.S.C. § 3582(c) (Docs. 61, 67) is GRANTED.

---

[6] PATTERN is a Bureau of Prisons recidivism risk assessment tool that
quantitatively evaluates such risk using fifteen factors such as current age, criminal
history points, history of escapes, education score, and serious of incidences while
inside prison.  (*See* Doc. 61-1 at 40–41.)

While Taylor's thirty-year concurrent sentences on Counts IV and V remain unchanged, his sentences on Counts I–III and VI–IX are each reduced to one (1) day, to run concurrently with each other and consecutive to his 30-year term.

IT IS FURTHER ORDERED that:

1.  Upon release from the custody of the Bureau of Prisons, Taylor is subject to a three-year term of supervised release during which he is subject to the conditions of supervised release ordered in his Judgment, (Doc. 30).  The United States Probation Office shall review Taylor's conditions of supervised release.  If modifications are needed, the Probation Office shall notify the Federal Defenders of Montana.  Counsel will be appointed to represent Taylor if necessary.

2. Before release, Taylor's residence must be verified, a release plan established, and appropriate travel arrangements made.

3. Taylor must provide the Probation Office with the complete address of where he will reside upon release.

DATED this ____ day of August, 2025.

Donald W. Molloy, District Judge
United States District Court

12